**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON**

IN RE:

| | |
|---|---|
| **LODESTAR ENERGY, INC.** | **CASE NO. 01-50969** |
| **LODESTAR HOLDINGS, INC.** | **CASE NO. 01-50972** |
| **INDUSTRIAL FUELS MINERAL CO.** | **CASE NO. 03-70015** |

**DEBTORS**

| | |
|---|---|
| **WILLIAM D. BISHOP, TRUSTEE and** | |
| **L.S. ACQUISITION CO., LLC** | **PLAINTIFFS** |
| **VS.** | **ADV. NO. 07-5033** |
| **TENNESSEE VALLEY AUTHORITY** | **DEFENDANT** |

**MEMORANDUM OPINION REGARDING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

This adversary proceeding is before the court on the motion of Plaintiffs ("Lodestar") for partial summary judgment (Document # 65).[1] After having considered the entire record herein, including the response of Defendant ("TVA") to the motion (Document # 131); Lodestar's Reply (Document # 152); statements made at the June 30, 2008, hearing on the motion (Document # 156); the parties' Proposed Findings of Fact and Conclusions of Law (Documents # 163 & 164); and the record of the main bankruptcy case, the court makes the following findings of fact and conclusions of law,

---

[1] Plaintiffs reserved for trial the amount of their damages.

pursuant to Federal Rule of Bankruptcy Procedure 7052.[2]

**FINDINGS OF FACT:**

The court's findings of fact previously entered, as amended, are hereby incorporated in their entirety (Documents # 89 & 136), and the court makes the following additional finding:

TVA admitted at the June 30, 2008, hearing that it improperly declared a *force majeure* event, thus preventing Lodestar's deliveries of coal to the Colbert plant pursuant to the contracts. The outage instead was due to operator error. TVA declared this event for the period of time from January 30, 2003, to March 27, 2003. (Exhibit # 19, "Expert Report of Joseph N. Pietratone," marked "CONFIDENTIAL.")

**CONCLUSIONS OF LAW:**

The contracts are subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613. That is, disputes are to be resolved through an agency administrative process. (41 U.S.C. § 602(b).) "[I]n matters dealing with contract disputes under Title 41 U.S.C. [a bankruptcy court] should yield to the jurisdiction of the Board of Contract Appeals unless the government seeks the bankruptcy court's jurisdiction or waives any right to object to [the bankruptcy court's] jurisdiction." *In re Am. Ship Bldg. Co., Inc.*, 164 B.R. 358, 362 (Bankr. M.D. Fla. 1994).

In this case, TVA did both--sought a determination of this court and waived any

---

[2] Factual findings may be found under the heading "Conclusions of Law," as well as under the heading "Findings of Fact."

objection to this court's jurisdiction. TVA actively participated in the main bankruptcy case by filing proofs of claims (POC #s 3040-1 & 3040-2) and entering into the agreed order amending its contracts with Lodestar (Document # 776, main case). It actively participated in the adversary proceeding by filing a counterclaim (Document # 13). Furthermore, at no time from 2001 to date has TVA objected to the jurisdiction of this court to resolve this dispute. In fact, TVA has acknowledged the jurisdiction of the court over this matter (Documents # 13 & 103).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c).

TVA asserts that Lodestar's summary judgment motion on the claim that *force majeure* was declared improperly does not survive because in its motion (Document # 65) and reply (Document # 152), Lodestar did not address the affirmative defenses that TVA asserted in its Answer to Amended Complaint and Amended Counterclaim (Document # 103). The court disagrees. "Just as a plaintiff need not disprove an affirmative defense in the plaintiff's initial portion of presenting evidence at trial, a plaintiff/movant need not anticipate and raise the non-movant's affirmative defenses." *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F.Supp. 1164, 1167 (S.D. Ind. 1992) (citing *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1090 (D.Del. 1990), *affd*, 932 F.2d 959 (3rd Cir. 1991)). Here, TVA asserted the affirmative defense of waiver after Lodestar filed its motion for summary judgment.

TVA breached the contract when it improperly declared a *force majeure* event

from January 30, 2003, to March 27, 2003.  The eight-week outage of the Colbert plant, and TVA's not directing Lodestar coal to one of its other plants[3], reduced Lodestar deliveries to TVA by 25,000 tons per week, for a total of 200,000 tons.

Contract provision 11.c ("Remedies") provides[4] that if TVA suspends Lodestar's right to make deliveries and the suspension is "finally determined" to have been improper, then Lodestar's "sole remedy" is rescheduling of all of the coal prevented from being delivered due to the improper suspension, with rescheduling to be "on dates acceptable to both parties, *but in any event not later than contract expiration*." (emphasis added)

The Uniform Commercial Code ("UCC") states that the parties to a contract are free to provide for remedies in their contract, the remedies chosen being "optional" unless the parties agree that a remedy is "exclusive."  UCC § 2-719(1).  Nevertheless, a remedy is not exclusive if "circumstances" cause it to "fail of its essential purpose."  UCC § 2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.")  The remedy provided for here–rescheduling the delivery of coal before the end of the term of the contracts–failed of its essential purpose–to have Lodestar coal delivered to TVA before the end of the term of the contracts–due to the circumstances of the Baker Mine closing,

---

[3] The only defined term in the contracts, "Destination Plant," is defined as "TVA's Colbert, New Johnsonville and Gallatin Fossil Plant or such other destination as TVA may elect under Subsection 14.g. of [these] contract[s]."  Subsection 14.g concerns f.o.b. purchases.

[4] The contracts are under seal, per Document # 777 in the main case, and the language of the two contracts is identical.

Lodestar discontinuing business, and the contract term ending.

Therefore, Lodestar is entitled to damages for the 200,000 tons of coal it was not permitted to deliver from the period of January 30, 2003, to March 27, 2003, when TVA breached the contracts by improperly declaring a *force majeure* event.

UCC § 2-703 is applicable here.  If a breach is of a whole contract, as it is here (UCC § 2-612(3)), then the seller may resell and recover damages as provided in UCC § 2-706 or recover damages for nonacceptance or repudiation as provided in UCC § 2-708.[5]  Lodestar must prove at trial to what extent it is entitled to damages under the UCC.[6]

---

[5] Section 2-706 requires that resell be in good faith and in a commercially reasonable manner, then the seller can recover the difference between the resale price and the contract price, plus any incidental damages and minus any expenses saved.  If the resale is by private sale, the seller must have given "reasonable" notice of intent to resell.

Section 2-708 states that, subject to proof of market price, the measure of damages is the difference between the market price at the time and place for tender and the unpaid contract price, plus any incidental damages and minus any expenses saved.  If this measure of damages is inadequate to put the seller "in as good a position as performance would have done," then the measure of damages is the profit the seller would have had from full performance, plus any incidental damages and costs "reasonably incurred" and credit for any payments or proceeds from resale.

[6] The court has concluded that Lodestar is not entitled to consequential damages, for these reasons:

The contracts did not provide for consequential damages, an exclusion that is not "unconscionable."  UCC § 1-106 states that consequential damages are not available except as provided for by the UCC or by law.  Section 2-719(3) states that consequential damages may be limited or excluded from a contract unless to do so is "unconscionable."  The term "consequential damages" is not defined in the UCC, but *Black's Law Dictionary* states that consequential damages are those that the seller had reason to know at the time of contracting and that could not reasonably be prevented. *Black's Law Dictionary* 352 (5th ed. 1979).

The record in the main bankruptcy case clearly indicates that at the time of entering into the amended contracts, Lodestar knew that its Baker Mine was an essential part of its business and that these amended contracts with TVA, at a

Because the contracts were in place until breach of them by TVA, TVA is entitled to damages from Lodestar for tonnage deficiencies for the period of June 1, 2001, the date the parties chose to waive prior claims, to January 30, 2003, the date TVA improperly declared that a *force majeure* event had occurred. These damages should be calculated according to the contracts, and the amount of damages must be proven at trial.[7] TVA's notice of default on July 3, 2003, was ineffective, since it came after TVA already had breached the contract.

Contract provision 11.a(i) ("Remedies") provides:

> If [Lodestar] fails to correct a curable contract violation within seven (7) days of first notice[8], TVA shall have the right to suspend [Lodestar's] right to make further deliveries until [Lodestar] provides adequate assurance to TVA that [Lodestar] will comply with all provisions of th[ese] contract[s], such assurance to be given in writing within seven (7) days after such suspension.

Deficiency in tonnage was a "curable contract violation" under the contracts since Lodestar was still in business at the time and presumably could have corrected any

---

"substantially higher" price and by extension of their terms, were important. In its motion to reject the TVA contracts (Document # 700, main file), a motion withdrawn after this court approved the amendments to the contracts (Document # 789, main case), Lodestar asserted that rejecting the (unamended) contracts would provide the "flexibility" that Lodestar needed regarding the Baker Mine, by allowing Lodestar to enter into new contracts, with TVA or others, or to close the mine. Thus, it was incumbent on Lodestar to insist on a consequential damages provision in the amended contracts at the time of amendment.

[7] The parties agree that TVA withheld approximately $1.3 million in payments to Lodestar. If it is shown at trial that any part of that amount was wrongly withheld, then any money wrongly withheld, plus interest, will be set off against whatever damages TVA proves at trial.

[8] Since the preamble to (i) states that TVA must give "oral notice, to be followed by written confirmation" of a violation of the contract, logic dictates that "first notice" is "oral notice."

deficiencies in the tonnage of coal delivered to TVA.  At no time during the period in question–June 1, 2001, to January 30, 2003–did TVA elect to suspend its contracts with Lodestar.  Therefore, this provision is not applicable here.

Contract provision 11.b ("Remedies"), second paragraph, reads:

> Unless TVA determines that the following method of calculating damages is not practical and TVA notifies [Lodestar] in writing that TVA's damages will be calculated in some other commercially reasonable manner, (1) such part of the highest priced coal (of comparable quality under one or more contracts) which TVA purchases at the next awarding of term or spot contracts for delivery to any fossil plant in the TVA system as would be required to replace coal which was scheduled for delivery under this contract after the date [Lodestar's] right to make deliveries under this contract was terminated shall be deemed to have been purchased as replacement coal for [Lodestar's] account; and (2) *for unexcused deficiencies occurring before termination or contract expiration*, such part of the highest priced coal (of comparable quality under one or more contracts) for which TVA awards spot contracts *in the week following each such deficiency*, for delivery to any plant in the TVA system, as equals the quantity of [Lodestar's] deficiency *shall be deemed* to have been purchased as replacement coal for [Lodestar's] account.  *If no spot coal was purchased before contract termination or expiration, TVA shall determine damages for all unexcused deficiencies in the manner provided in item (1) above, whether such deficiencies accrued before or after termination or expiration.*  (emphasis added)

This provision in the contracts permits TVA to calculate damages for tonnage deficiencies in any commercially reasonable manner if it gives Lodestar notice in writing of the method of calculation.  Consequently, TVA was not required to give Lodestar *prior* notice that it was using a different method of calculation.  However, the method must be commercially reasonable, and TVA must have given Lodestar written notice of its change in the method of calculation.  These are among the facts that must be determined at trial, including whether TVA purchased spot coal according to item (2) of the contracts.

In addition, TVA's claims of laches and waiver and Lodestar's assertions that TVA's claims are barred by waiver and course of dealing will be dealt with at the trial on damages, since both parties' claims go to the amount of damages to which each is entitled and since the claims are factually based.

Copies to:

Robert J. Brown, Esq.
Jeff Woods, Esq. (service by U.S. mail)
Jean W. Bird, Esq. (service by U.S. mail)
Albert J. Woodall, Esq.
Richard E. Riggs, Esq.
William T. Terrell, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott*
**Bankruptcy Judge
Dated: Monday, August 11, 2008
(jms)**